Case No. 09-2481, In the Interest of K.D., a Minor. All right, before we begin, we want to clarify whether there's a roll. I'm not sure. We can wait, and what we'll do is we'll ambush the State's Attorney when the State's Attorney steps up. Sounds good. Counsel, on behalf of the DCFS. Good morning, Your Honors, and may it please the Court. My name is Paul Resett. I'm an Assistant Attorney General for the State of Illinois, and I represent the Illinois Department of Children and Family Services in this appeal. This appeal arises from a delinquency proceeding in juvenile court. The State's Attorney had filed a delinquency petition against the minor, alleging that he had committed 10 counts of offenses. They were prosecuting him, in effect. Yes. They were prosecuting him. Correct. It was under that. And now they're here on another roll. Do you know why they're here? Did they tell you why they're here? They filed a brief in this case. Right. No, I don't understand. I'm not sure that's an issue you want to address at this point. Well, I thought he might have an opinion. He's an attorney general. He might have an opinion. I mean, I think as an athlete, I don't have a forfeiture problem in not arguing anything below, but I think it's very odd that they took no position below and now are vigorously. But you didn't file a motion to strike or dismiss them from this case or stop them from presenting argument, right? Right, because they were already below. And I think as an athlete, you don't have to preserve your issues in the lower court. So let's get to the substance of your case. Just so I'm clear, you are saying that the juvenile court has subject matter jurisdiction regarding the delinquency petition, but that subject matter jurisdiction is limited to an adjudication of that petition and cannot extend to the neglect petition. Unless also a neglect petition is filed. In this case, there was a delinquency petition, so the court certainly had jurisdiction to accept the guilty plea and to sentence a minor to three years probation. And your best case that a juvenile court has some sort of truncated subject matter jurisdiction based on the pleadings before it is what? Which case are you relying on? Well, EF is squarely on point. And EF, what does EF really stand for? Doesn't it simply stand for the proposition that when the statute itself says a juvenile must be under the age of 13 or under, that statute must be followed? But you're seeking to expand the holding in EF to address this case, and we all can agree that the juvenile was 15 years, 16 years old. True? Right. Well, first of all, the age has changed since EF, so that's some of the difference in the cases. At the time that EF was decided, if a juvenile delinquent was 13 or older, the sentencing judge could not place them with the department on that basis alone. And one way to interpret EF may be that your office, on behalf of DCFS, did such a good job that the legislature decided that an amendment to that statute had to happen in order to address problems that couldn't be addressed because of the wording of the statute. But actually, at EF, we weren't saying that the minor couldn't be placed with us as a neglected minor. We were just saying that you need to do it pursuant to the Article 2 procedures, which is exactly what is included in this amendment. The legislature in the 08 amendment did two things. It raised the age from 13 to 15, at which the department could no longer have the child placed with them on the basis of delinquency alone. But it also said that if there truly is an independent basis of abuse, neglect, or dependency, then pursuant to Article 2, and the legislature put that explicitly in Section 710.1A4, if pursuant to Article 2 there is found to be an independent basis of abuse or neglect, then the child can be placed with the department even though he's over 15 and even though he is a delinquent. But you'll admit that in EF the language was a bit different. Correct. It said, but only if. Now that's a bit stronger language than pursuant to Article 2, a minor for whom an independent basis of abuse, neglect. An independent basis of that. And here's the question I have for you regarding that specific language. Sure. If you're saying that Article 2 must be followed, that a petition for neglect must be filed, and once a petition for neglect is filed, all the procedural steps pursuant to Article 2 must be filed, why didn't the legislature simply put a period after, pursuant to Article 2 of this Act, period? Why put in that additional language if you're going to follow Article 2 regardless? Well, because they're pointing out that it has to be an independent basis. Well, doesn't Article 2 address that? No, because in some cases the delinquency and the neglect and abuse can be intertwined. So that's the point of that. If, for example, the parents don't want the child. They may have been here if you listened to the probation officer. Nobody's addressed that in their brief, the fact that the probation officer's report is really what the trial judge was relying on. Right. I mean, it's all hearsay. No witnesses were there live. There was no cross-examination. The parents were really given no- Nor was there any indication that there was a distinction between the delinquency issues and the neglect issue. Well, the neglect issue wasn't raised until the day of sentence. Of course not. I mean, the probation officer- I can understand why the trial judge was upset with the bureaucratic position of DCFS, but it wouldn't be the first time that a trial judge got grumpy with DCFS. Right. But I mean, his problem is- We can take judicial notice of that. His problem is he kept calling it our bureaucratic nonsense, where really it's the legislature that mandates all these procedures in Article 2. It wasn't bureaucratic nonsense in the first place. That was just a hyperbole by an irritated judge. I mean, he said numerous things- But you will admit, given that the state's attorney is on the other side, that it is somewhat of an open question. I understand your position. Are we going to assume that the state's attorney makes it an open question by filing a brief? Well, we don't know in my mind. I'm still undecided. I can't read their minds, so I don't know why they chose to get in at this late point. But I will note that in KD's brief, they talk about the legislative history and that the counties had pushed this amendment because they were trying to shift costs from the county to the state. Is the statute ambiguous? I don't believe it is. The legislature says- Well, if it were. If it were. It would be an ambiguity in 701, the current version. Tell me, if a neglect petition was filed, what difference would it make? The difference is that the parents would have been notified that there were neglect allegations against them. Well, these parents didn't give a damn, did they? Well, I think that that's not fully developed in the record. I mean, we have various hearsay statements. And, again, the probation officer wasn't doing a neglect investigation. She was preparing a pre-sentence report. And then the judge, Terry Pick- Between the two, which implicates the parents' rights more so? Do you think a neglect petition impacts the parents more so than an adjudication of guilty? I don't know. It's not guilty, but whatever. In a delinquency petition, because he's already entered a plea of guilty, and the only step to go forward on is one of sentencing. So between that situation and the other, which is- But it's his own conduct, not theirs, which I think is a big difference. You can be the best parents in the world, and your child can commit a delinquent act. So it's one thing for the court to say that the child committed a delinquent act. But I thought the point was that they hadn't been notified, they weren't in court, and certainly if they were going forward to sentencing on a delinquency petition, all of those steps had to have been followed prior to sentencing. Only concerning the delinquency, under Article V, the only issues are did he commit the mugging? So are you saying that the parent gets a delinquency petition notice- They did here. And they say, well, it's only a delinquency petition, I don't need to show up. Now if it had been a neglect petition, of course, then I'm going to go to court. Well, I think they have a stronger interest in defending themselves. The juvenile had an attorney, first of all, so they didn't need to speak for him as a mouthpiece. Second, I think there is a difference between saying- This goes to Justice Gordon's point that what indication is there that the parents really did have any real concern? But we can't just assume that. Right, we can't- In every neglect and abuse case, we could just say, let's cut through all of your- No, no, no. I don't think every delinquency case is like this. Could the state proceed to terminate the parental rights based on the finding by Judge Walsh that the- Well, that's the problem here because there's a procedural- I'm just giving you a soft point because it's kind of- Right, but there's a procedural void here because in a delinquency proceeding, the sentencing is the last step. So at the sentencing, the judge is saying, I'm adjudicating that under the evidence in this report, these parents are neglectful. Well, how are they supposed to- Could they terminate their personal- Could they terminate parental rights based on this hearing that Judge Walsh held? Possibly, but again, not under Article V. A delinquency judge wouldn't normally hear those sorts of things. I know. That's the interesting thing about this. He's found neglect, but in terms of termination of parental rights, he had no jurisdiction anymore. Correct. He had jurisdiction over the delinquency. But there's a whole different courtroom at the other side of the building with judges assigned to- True. All that's true. All that's true. But let's look at the practical situation here. You have- well, first, let me get a conception on your part. That's no big deal. But obviously, the primary goal of the Juvenile Act, as stated repeatedly, and certainly most recently, in Justice Burke's in re LH, it is the best concerns of the minor. So you're saying that the best interest of the minor. And you're saying that the filing of a neglect petition must precede this Judge Walsh's action because the best interests of the minor dictate that? Or are you saying that the best interests of the parents dictate that? And really, the underlying question here is, what does the minor do in the meantime? Where is the best interest of the minor, given what Judge Walsh knew at the time? Does he let them go back out? Where does the child go? Well, see, that's not even clear, and I think that the court made some assumptions. What it says in the social investigation report was that she had an initial meeting with the minor, but then she couldn't locate him. Apparently, he was staying with different friends for short periods of time. From that, the judge took it and said he's living on the street, which there's no evidence in the record that supports that. Did they have more information regarding the parents? Not just the minor, but the parents. Did she make an effort to contact the parents? Did she get some background information? That is right. But it wasn't for the purpose of finding out whether they were neglectful. I understand, but I can't understand that the information provided would change based on the purpose you were trying to solicit that information for. Well, sure, because, first of all, it's hearsay. So the things that the interviewee said to her might not have been true, and under cross-examination, she could have been exposed as follows. Let's say it's a neglect petition. Parents get service, and they don't show up in court. Right. Information's going to be provided to that judge. Correct, but they should at least be given the opportunity. Right. So, but hearsay comes in. It's a question of reliability, and no one is questioning the reliability of that information for the purposes of letting the judge do what he thinks is in the best interest of the minor, which is the primary directive under the Juvenile Act. Well, again, I don't think... Justice Garcia is suggesting that every trial judge accepts and swallows all probation officer reports. Right. And, again, like... Depending on the circumstances, it certainly happens. The probation officer wasn't trying to find out whether the child was neglected or not. And I think there's conflicting evidence here. There's all sorts of scenarios here. Why was the child not living at home? If he's a habitual runaway, he's running with the gang, then it's a dependency case, not a neglect case, because... Well, wait a minute. When you say why he wasn't living at home, what home? Where was there a home? He had been living with his father and his paternal grandmother for a number of years, and apparently at some point there were a lot of confrontations between the father and the son. According to the probation report, because the father had rules, such as chores, curfews, things like that, and the son was refusing to abide by them. Well, didn't the trial judge make a finding that the father couldn't even take care of himself and the mother couldn't take care of herself, so how are they going to take care of a child? I think that they were going through checking off boxes that were required to make this placement, but it wasn't after... For one thing, for example, the department is supposed to be given an opportunity to provide services to the family, because whenever possible we want to keep minors with their family or try to place them with a close relative. Wasn't the judge faced with an emergency situation here because of the birth date coming on for the minor? No, no, because he misunderstood the law and neither of the appellees dispute that. You can find out minor neglect until age 18, not until age 17. And you make that clear in your reply brief the first couple of pages, but that may be somewhat of a jauntous view of what the trial judge was doing. He wasn't concerned necessarily... What was driving his decision wasn't the upcoming birth date as much as the circumstances that the child was in. And I call him a child, but he's 16. But let's go back to... But the record wasn't properly developed about what was really going on, is what I'm saying. And if there were a neglect hearing, there would be. But let's go back to case law, because you concede that this is a statutory interpretation case. Right, if I could address something that you asked earlier that I didn't get a chance. To the extent that this statute could be found... I'm sorry. Go ahead. I thought that there was a compound question that you asked, and I only got to the end of it. So I'm going to go back. But to the extent that you could say that this statute is ambiguous because we obviously disagree about what it means, I think that you should construe it in a way that would be constitutional. And if you construe it their way, then the parents would be denied their... Let me ask you this regarding the... There are always two questions, you know, constitutional as written or constitutional as applied. Is there really any real question that, as to the parents that are involved in this case, that their constitutional rights have not been violated up to this point? No, I think... There's been no termination of parental rights. But they've been adjudicated neglectful parents without even being informed of the allegations or allowed to come in and deny it. Let's talk about allegations for a second, because I think we're going to hear about that word allegation in the statute from the state's attorney. I just have a hunch, since they stress it in there. Right. I think that based on a mere allegation you should be able to... Well, now wait a minute. The word... It isn't mere allegation. It's just plain allegation. Okay? Does that mean that you could interpret... That's why I asked you originally whether this statute's ambiguous. Whether the statute is suggesting that allegations from something like a probation report is a sufficient basis for a finding of neglect in this context where the judge is exercising his sentencing options. It seems like there's no way to... Is that a reasonable interpretation of the statute? I don't think so. What's the word allegation doing in there, then? Well, I can only speculate, but what I think is... Go ahead, speculate. I'm interested. You're the attorney general. You're in charge of interpreting the statutes for the governor and all other agencies. As we talk about in the reply brief, there was a department regulation promulgated in the late 1990s that talked about allegations. All this independent basis language was not in the statute prior to 2008. And it looks like the legislature verbatim clipped that language from the rag and pasted it into the new statute. That's a speculation on your part. But, I mean, it's word for word. We'll deal with it as it exists. It's word for word. But, I mean, to the extent that they meant, you can't conclude that the legislature intended to render an unconstitutional situation. Well, we certainly couldn't conclude that the legislature intended to find parental neglect based on their allegations. So I added the word mayor. I mean, that sounds like something in the Soviet Union. Without giving the opportunity for the other side to be heard, which is really what the issue is all about. And they're saying that the judge had authority to do that, though. Yeah. They're saying here he did find an adjudication of neglect. He could have just said a mere allegation. In the best interest of the child, I am going to shorten up this whole process. And if it means that the parents are going to be deprived of due process, I'm going to rely on the probationary report to conclude that they're not interested anyway. That's basically what the trial judge said, isn't it? I mean, the problem with that is in every other sort of neglect and abuse case, there can be horrific allegations of torture, burning. Those parents get all those protections under Article 12. Just because it's a delinquency thing, we throw all that out the window, and we don't care at all about the parents. That's such an absurd interpretation in our view. Isn't it? Doesn't it really call for a balancing? I mean, you talk about these allegations being unsubstantiated, if that's your position. And then the other reality, and the reality is that this trial does not have a place to be. And, in fact, that was really one of my questions. If best interest is really guiding judicial action in the juvenile court, what should have Judge Walsh done regarding where that child was going once he left the courthouse? Well, first of all, as I said earlier, it's not really clear what the circumstances are here. If the child is running away from home and doesn't want to live at home. Taking the record in the light most favorable, consistent with Judge Walsh's order, what do you do with it then? Well, what we think should have happened is he shouldn't have waited until the day of sentencing to bring the department in. What if that's the situation that the caseload at juvenile court forces a judge into? When you have a sentencing order, that's when you put your effort into the case, and that's when everything comes to light. Well, the probation officer certainly knew that the child could not be located, and she could have notified the department, and the judge received that report prior to the sentencing, so he could have instructed the state's attorney to file it. But what if he didn't read it until the day of sentencing? Well, then the other thing that our attorney pointed out to the judge was that we could take custody of him if there's an emergency situation temporarily without appointing us as his guardian or finding the parent. If I could just to have a place for me to do those sort of things. But there was some sort of assertion that the likelihood of DCFS willingly taking that sort of action seemed unlikely. No, that was about the dependency committee. This is different. If a judge – Did you volunteer that information at the time? I'm sorry? Did your office, I mean DCFS, volunteer that alternative track to Judge Walsh at the time? He did say, and it's in Article II, when in neglect – No, it's in Article II. I mean, I don't dispute that. But did DCFS say to Judge Walsh at the time he wanted to do what he thought he had to do, did DCFS say, Judge, you don't have to really do that. Yes. You can do this instead. Yes. He said, where do I have him sitting here? What am I supposed to do with him? And Attorney Greaves said something – I don't have it. All right. Well, you're going to get it. You're going to get an opportunity to respond. The attorney said, in a situation where the minor is in danger and needs immediate assistance, we can take him on a temporary basis. And that's actually in Article II, because when the neglect petition is filed, the temporary care hearing isn't held for 48 hours. So during that period, if it's truly a dangerous environment or the child is homeless or whatever, the department will provide temporary care until things can be figured out. Let me ask you one question. Sure. When all is said and done, the petition was filed. Would it have made any difference in this case? Well, we don't know because there never was a hearing on neglect. I mean, the parents might have been able – and, you know, they try to paint the parents as uncaring, but the father and the grandmother were coming to court. The father had laid down rules that the child did not want to obey. And the child said that he would go back to living with the father, although only if he could continue to live flaunting all the rules. So that makes it clear. A neglect order like this also has collateral consequences if they have other kids, too, doesn't it? I believe so. Of course it does. That's one of the reasons you have a petition filed, to protect their interests with respect to other children they might have. Right, and the people were saying – And all of those concerns would come to light whenever, if DCFS decides to go further, and then the right ruling would presumably follow. And this child being separated from the family, treated differently than those remaining within the family. But my point I was going to raise is that the father was there. The father was there. Did he voice any kind of concern about a neglect worry? I don't know how sophisticated he is, and I assume that he did not have his own lawyer representing him. Well, the petition was filed, so he couldn't have – Right, but it was the same thing, Jerry. The judge says to the probation officer, how can we put this kid with the department? And the probation officer says, well, I can ask them to take him voluntarily, but they probably won't. And the judge is like, well, you know what, I don't care about committees. I'm the committee. He's neglected. He's going to them. And they can take it up if they don't like it, and I'm sure they will. This would be the last point regarding – because case law obviously has to drive our decision. And one of the things that I found – Well, a statute has to drive our decision, too. We interpret it. We interpret it. And there is interpretation of the statute in A.H. Of course, it isn't directly appointed. If it were, we wouldn't be here. Right. But it did involve a DCFS challenge to the jurisdiction of the juvenile court, and I thought the Supreme Court made clear what – the limitations on such a challenge. But in that case, the direct petition had been filed, so that's why the court found that there was such a major issue. DCFS did challenge the juvenile court's jurisdiction over that. To make a specific order, not over the entire case. That's why it's different. But it was a subject matter jurisdiction challenge. Correct. And then if I can make one other point and then save the rest for rebuttal, Katie has talked about the legislative history a little bit, and I think – I'm not sure who you're referring to. Katie is a minor. Katie has talked about the legislative history a little bit in their brief, and I think if this amendment in 08 was meant to make this giant change, where suddenly a delinquency court could do this sua sponte with no allegations, no opportunity to present evidence, that there would have been some hint that they were doing that in their legislative history, and there's not. They were talking mainly about – It's not a floodgate sort of argument, is there? You're not talking about opening up the floodgate? No, I'm just thinking if they were intending to overrule E.F. and give the delinquency courts this whole new power that there would have been some discussion. If we find ambiguity, as Justice Cahill points out. Correct. But I think if you do statutory construction, the plain language says, pursuant to Article II, meaning the procedures, because Article II is all about procedures. And if it ended there, I think your position would be certainly far stronger. Thank you. Thank you. Good morning. My name is Kathy Lyons, and I'm here on behalf of the minor K.D. I'm from the James B. Moran Center for Youth Advocacy, which was formerly named the Evanston Community Defender. I sense that you actually want to hear from the State's Assistant State's Attorney. That's fine. You filed a brief, too. I will ask you – We are going to share our time. How much time are you going to take? But you're from the Evanston Community Defender. Our name has been changed, so we're now the James B. Moran Center for Youth Advocacy. Well, that's nice. After Judge Moran. Exactly. The late Judge Moran. He was a wonderful judge. It's a great tribute to him, and it's a tribute to the work you folks do. I'm familiar with it. And I can understand why you're here. We are here because – You'll get your chance. I'll tell you, in an odd twist of judicial – we are here together, the State's Attorney who brought the delinquency petition and we who opposed it, are here because, in this case, to be honest, the judge got it right. The judge did exactly what the juvenile court requires of – How did the judge get it right? Did the judge get it right based on the language that he interpreted or based on the result that he thought was the right result? I think actually both, Judge. Well, help us out on the language. Sure. Let me just take one step back, and you've already articulated the overarching framework that we should be working from is the best interests of the minor child, not – Well, I think before we get there, we have to make sure that the language allows the juvenile court an opportunity to address the best interests. Absolutely. And when we look at the plain and ordinary language, I think there's no ambiguity here. Also, we need to – and although I disagree that the Department's most recent submission of a case has any applicability to this case, the Supreme Court did give some guidance in terms of statutory construction. That is that we have to look at the whole statute. This is a small part of a sentencing – a big sentencing provision. Sentencing – Just so it's clear, and I hate to keep interrupting, but just so it's clear, if the minor were less than 15 – We wouldn't be here. There'd be no question. You wouldn't be here, and the concerns expressed by Justice Cahill wouldn't be here either because the DCFS could have taken guardianship without a neglect petition having been filed. That's true. No question. And let me just look in terms of the context of sentencing. What were Judge Walsh's options here? We could – well, frankly, if you look at the bigger options, you could order a gang tattoo removed medically. You could order someone into substance abuse. You could order a minor – you could order legal guardians. This is the inclusive over inclusive argument, but we really – I need the language that you're relying on that allows the judge to have done what he did. We would – we believe, and I think it's clear that pursuant to Article 2 of this language, references the definition of abuse, neglect, and dependency, but if you read the entire statute, it describes – He had to have an independent basis. I was going to say, it goes on to describe what an independent basis is. And what is it? It exists when an allegation or adjudication of abuse – You're going to have to rely on allegation here, aren't you? Allegation. There was no adjudication. And it doesn't – that's because the legislature didn't intend there to be required – a separate subject matter jurisdiction, a petition filed, an adjudication. A mere allegation. But they could have required an adjudication if they wanted to really make the parental protection – Absolutely. The key to all this. They could have said pursuant to a petition being adjudicated under Article 2. The other thing is, Your Honors, I think in terms of the facts here, we have a fairly unique situation with K.D. It's not – the judge did not merely hear that the parents were incapable or unable to take care of K.D. He didn't hear anything like that. All he got was the probation officer's view of the case. I think an important point that is in the record that hasn't been brought out yet is that father and grandmother were both in court. Mother never appeared. Mother defaulted, actually. Mother has never responded to anything. Father and grandmother both were in a situation where they were basically going to be homeless. Father's apartment building was foreclosed. Father – currently, although it's not in the record, but father does – we don't know where father is living now. Was he ever given any indication, any indication whatsoever, that there would be an adjudication based on allegations that he was a neglectful parent? It's not an adjudication. I know. There's no requirement that there be an adjudication. I know. So was he ever even – was he told that it didn't make any difference, that the mere allegations of the probation officer were sufficient for the judge to find that he was a neglectful parent? Was he ever informed of that? You say he was in court. He was in court. Did anybody indicate to him that his rights were in jeopardy in any way? The father was thrilled with this placement, and father has been cooperating with DCFS. You didn't answer my question. He might have been thrilled with everything. The point was, is that he – was he aware that he was going to be labeled a neglectful parent? And, in fact, Judge Walsh, rather than directing his frustration with DCFS, maybe should have taken those steps to address directly the father and let him know what he was going to do that went beyond the delinquency petition. He didn't. But there's nothing that goes beyond the delinquency petitioner because this is what – if – let me ask what else – where else should Judge Walsh have put this child? Could this – could this finding of neglect that Judge Walsh made – he had to make a finding of neglect. No, he had to find a minor. It was a minor for whom an independent basis existed, which – For neglect. For neglect. For neglect or dependency or abuse. Okay. Now, does that have any collateral consequences for the parents? No. How do you know? Parental rights aren't terminated. It's not an automatic thing. Let me ask you – I know it's not automatic. Would it have been different had he – The neglect is automatic. That's my point. No, it's – no, it's not an adjudication. He found that they were neglectful parents without any opportunity for them to be served or heard. He found that there was a – The last time I – the last time I looked around, I can't think of a single procedure in the entire Juvenile Court Act or in the structure for child dependency where the parents, the natural parents of the child, don't have the due process right to respond to a possible prejudice to their position vis-à-vis their kids. I would argue that this isn't about the parents. The fact that they're not present doesn't impress me at all. Were they served? Were they notified that a hearing would be held in which case they would be found to be neglected parents? It's the focus of this petition. I'm not sure what the focus is. Yes, I'm asking you a question as to whether they received any notice whatsoever or any attempted notice. They were notified along with the delinquency petition. This may be part of the answer. Yes. That due process rights of the parents certainly is something that has to be respected and observed, and the way that can happen is it's not an adjudication of neglect as you take your position. Right. And there cannot be, it cannot, even if it were an adjudication of neglect, it would not necessarily follow. That determination of rights can follow from that. There would still be a due process rights hearing subsequent to any adjudication of neglect, and at that point all the necessary steps that due process requires would have been, could have been followed or would have been followed. Two things on that. And I think you're going to have to wrap up. I will. If I may respond to that, two things. Number one, there would be a whole other separate petition for termination. That's a whole other proceeding under Article II. But may I just say my second point, and that is that would the parental rights, or is the effect on the parent, if the only other option for this child is audi home and then DOC, is that better for the child? No, the best thing to do would be to file a petition for neglect. Nothing that prohibits that. Nothing that prohibits that in the statute. But is there anything that would prohibit it? It could have been done. In fact, could the trial judge have ordered somebody to file a petition? Absolutely. Nothing that prohibits or prevents in the statute. He could have ordered a petition. But he felt he was under a deadline, didn't he? Was he under a deadline? Well, in this case he already took the child into custody. Was he under any kind of a deadline that deprived him of jurisdiction? No. He thought he was going to lose jurisdiction when the kid turned 17. He was wrong about that, wasn't he? He had a whole year. In which case the child would have been in the audi home? I mean, I think we need to look at where was the judge, where was the child, and what would be happening while all these other proceedings were going on. All of those things are interesting things to speculate about where he might be. All I'm suggesting to you is that you are telling us that your interpretation of the statute is that an allegation is a sufficient basis. An allegation of neglect is sufficient to make a finding of neglect. No, it's sufficient to place a child in sentencing. But in order to do that, you're in a catch-22, because the statute requires him to make a finding of neglect before he can do it. No, it makes him required to find an independent basis exists, which means it is not an adjudication. The independent basis is merely an allegation. Now I'm using your word, but it is an allegation or an adjudication. And let me give the State's Attorney time. Thank you. I'm not quite sure I want to come up here. Oh, sure you do. Assistant State's Attorney Nancy Blackwell. This is devil's advocacy, incidentally. I don't think you should make the mistake of thinking that because we question the way we question, it is a reflection on what we think. Good observation. You were just as tough on me, right? I was merely attempting to make a joke. And I'm sorry, your last name? Assistant State's Attorney Nancy Black Falls. All right. Ms. Falls. Good morning. Good morning. Black Falls, is it both names or just one? You can use Falls. Okay. Ms. Falls, why don't we stick with, why don't we at least try to clarify that particular point, and that is whether for Judge Walsh to have taken the action he did, there is actually implicit in his action an adjudication of neglect. Absolutely not. Okay. And if there is no adjudication of neglect, do the parental rights of protection indicate it? Don't come into play. They don't come into play. The rights cannot be terminated. There was no finding of neglect. So why is there no adjudication of neglect based on what Judge Walsh did? Respectfully, I believe that Judge Walsh, as evidenced by the record, was a little bit confused as to a number of things. And it's very easy because in child protection law and delinquency law there are a lot of different age requirements, a lot of different statutes. And he said on the delinquency side, the other side, as counsel pointed out, is on the other side of the building dealing with neglect and abuse. That's a whole different world, and that's been my world for the last 12 years. And just as an aside, the reason that I'm here, I am not sure why this hearing was held ex parte, but just because we weren't there doesn't mean that we, as the people, don't have an interest in what's going on with the kids. What's your statutory basis for being here? From the delinquency case. This is still part of the delinquency case. Were you prosecuted? Yes. You're the prosecutor in the delinquency cases. I am. You want to uphold a sentence that was imposed. Right, but you also have to look, if you're looking at the delinquency side as compared to 26th Street, 26th Street is surely prosecutorial. You're not purely prosecutorial, Ms. Bland? No. Do you have another function as the state's attorney? In delinquency court, absolutely. Absolutely, because what delinquency court was brought into, why it's even there is because we don't want to throw our kids away. Even our kids that do bad things. Now you're making a speech. Let's go back to the no neglect adjudication. There was no neglect. I know that. That's your position. The question is, what do you base that on? I base that on that there wasn't a case. Is there a case that says that when this sort of situation occurs in delinquency that there is no adjudication of neglect, or is there statutory language that you're relying on? There is no statutory language that says a petition for adjudication of worship based on neglect has to be filed. If we can get back to what Justice Gordon said, the reason that allegations are in there is because this kid is up for sentencing on a delinquency case. It's very plural, isn't it? It's singular, isn't it? Allegation. Allegations of. Okay, it is. Go ahead. I'm sorry. If you want to use it singular or plural in neglect. The judge made him a ward of the court and had a number of options. He could sentence him to under 710. What would the point be in taking and filing a petition so that a child protection judge could get to the point of making this child a ward of the court? Black, you've been involved in this for a long time. This could boil down to something as simple as a turf war among various agencies, okay? Now, as I understand the record from what I've been able to glean from the record is that the trial judge in this case was really annoyed with the Department of Children and Family Services. They did not want to take this kid until all of the procedures for finding of neglect had been followed. Their interpretation of the statute may have been bureaucratic, but it was perfectly reasonable for the Department of Children and Family Services to say to the judge, your honor, the statute makes clear that in order for us to take a kid based on neglect, somebody has to make a finding of neglect. You're saying, oh, no, this trial judge can order the department to take this child even though that neglect hasn't been found. It's the old story, you're being a strike former, a state's attorney, when trial judges try to tell the Department of Corrections what to do with people who have been sentenced. You're familiar with that problem. I am familiar. Trial judges will say, I don't care what the Department of Corrections says, I want this man sent to Pontiac. What happens? The Department of Corrections says to wherever they. Exactly. Exactly. And what the Department of Children and Family Services was saying in this particular case is the statute is clear. We don't take a kid who's been neglected until a petition for neglect has been adjudicated. Where does it say that in the statute? Well, that's their interpretation of the statute. That's their interpretation, and I. We're going to address that, so you're going to have to wrap up. Anything more? You know what, as my last argument as an assistant state's attorney, I have nothing more to say. The department is not going to give up without a fight on this. Well, of course they're not. It's too expensive for them. They, of course, don't want to have to take this kid. All right, you rest on your feet. Absolutely. All right, thank you. Mr. Reset, why don't we start with that need, whether or not there's a need for, whether or not legally it followed that once DCFS was brought into the case, it was, it had to be based on an adjudication of neglect by Judge Walsh. Well, because this child was over 15. True or not true?  Was there an adjudication of neglect? Well, he said that he was making a finding of neglect. It's to me a finding and adjudication are synonymous terms. So, I mean, that's another case. Okay, that's the facts of this case as you read the record. Correct. Was that, I guess my, did Judge Walsh say that he had to find, he had to make an adjudication of neglect in order to force DCFS to take the child? He said that under the law, if he makes a finding of neglect, that we have to take the child. So he said, so I'm finding the child neglected, and he checked the box on the place in order that says that the parents are unwilling or unable, I forget which one it was, to care for the child. He had to make adjudications. Right. Based on allegations. Right. I mean, they're claiming that in another case the judge could do it based on myriad allegations, but here he actually purported to make an adjudication even though no evidence was ever put on in front of him. Well, could we, as a court of review, decide that really what the judge did was find, make an adjudication of neglect on allegation? Well, I think what it talks about is allegations or adjudication. I don't know. Allegations could never be an adjudication. Okay, well, could we say that he really meant to do it on an allegation? Our position is that that would be even more unconstitutional because there wouldn't have been any basis for him to order the kid to the department. Correct. I mean, if this child. He has to have some statutory basis for ordering the department to take the kid. If this child is truly neglected, we have no problem with taking him, but we think that they need to go through the proper procedures of allowing the parents. How long would that have taken? It varies, Your Honor. I mean, one of the reasons that I cited that case, which counsel thinks is totally irrelevant, is because there's a nice summary of the article to procedures, and it says there's a statutory limit of 90 days when an adjudicatory hearing has to happen after the petition is filed, but I've been told by our counsel, in a simple case, it can be as little as two weeks. Yeah. And here, this delinquency petition pended for five months, so there could have been collateral proceedings going on at the same time if there truly were independent neglect allegations. The other thing I wanted to talk about is the reason for this. Before you get to that, didn't the judges make a finding that the child was neglected based on the probation officer's representation that neither parents wanted the child to live with them? Is that the same thing as a finding of neglect? He actually said on finding him neglected, but the only information he had was in that report. I may disagree that he said that. I think it's more likely that he said that they were neglected based on representation of the probation officer. Well, to be neglected, someone has to be doing the neglecting. I mean, if the child is running away from home as a habitual runaway, he's dependent, which is sort of a no-fault category where it would not be stigmatizing for the parents to say that he needs the services because he's a dependent minor. But under their interpretation, and this is a neglect case, which is bad enough, in an abuse case, the sentencing court would do the same thing. Say it says in the probation officer's report that the parents regularly beat the child. Under their interpretation, the sentencing court can say, well, you know what, I'm finding him, I'm adjudicating him abused without the parents having notice or an opportunity to respond. And as they say, they think that because it's not the final step, which is termination of parental rights, that it's not stigmatizing, it doesn't have negative consequences. But how many people would want? How is it stigmatizing? How is it? Would you want your neighbors and your coworkers to know that a judge found you to be a neglectful parent? One rule. Don't make allusions to me or anyone under here. I'm not you like you. Or generic you. All right. All right. I'm just curious. How is it stigmatizing in this particular case in light of what is already out there? Well, what's out there is it's all about his mugging, which the parents had nothing to do with. This was a delinquency proceeding. No, but we also have more than that. We also have. We have some conflicting evidence. All right. But let's say in light of the conflicting evidence, however you want to read it, how is this really stigmatizing? You're saying based on the court order itself? A court to adjudicate both parents to be neglectful parents. You'll need to wrap up. Okay. One minute. Basically, about the independent basis of neglect, it doesn't always arise at the sentencing. There can be situations, for example, let's say that the child had already been removed from the home based on abuse and was with the department. If he commits a delinquent act, now the department can keep him. It doesn't have to say he has to go to what used to be called the audi home. The other thing is there could be a case where a child is found delinquent, put on probation, placed back with his parents, and then six months later the parents are killed in a car accident. Well, that's an independent basis of dependency. So in a situation like that, the statute would allow the judge to place the kid with DCFS even though he was a delinquent. So, I mean, there are all sorts of scenarios where this applies rather than just trying to twist the facts and force a delinquency action into a neglect action. Thank you. All right. Thank you. This will be taken under advisement. We're going to take a short break.